IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RESIDENTIAL WARRANTY SERVICES, INC. and P. NATHAN THORNBERRY,<br><br>        Plaintiffs,<br><br>    v.<br><br>PORCH.COM, INC. and PORCH GROUP, INC.,<br><br>        Defendants. | C.A. No. _____ |

## COMPLAINT FOR DAMAGES

Plaintiffs Residential Warranty Services, Inc. ("RWS") and P. Nathan Thornberry ("Thornberry") (collectively, "Plaintiffs"), by and through counsel, for its Complaint against Defendants Porch.com, Inc. and Porch Group, Inc. (collectively, "Porch" or "Defendants"), file this Complaint for damages and other such relief this Court deems just and proper. Plaintiffs expressly reserve the right to amend this Complaint as additional facts are discovered. Plaintiffs state as follows:

### INTRODUCTION AND NATURE OF THE CASE

1. This Complaint arises from Defendants' multiple and continuing breaches of three relevant contracts between the Plaintiffs and Defendants: a Stock and Membership Interest Purchase Agreement ("Purchase Agreement"), a Shared Services Agreement ("Services Agreement"), and an Advisory Agreement.

2. Under the Purchase Agreement, Plaintiffs were to sell substantially all equity interests in certain entities and subsidiaries owned by Plaintiffs to Defendants. A true and accurate copy of the Purchase Agreement is attached hereto as **Exhibit A**.

3. The Purchase Agreement required Defendants to pay Plaintiffs a certain amount for three distinct transactions: a First Closing, a California Closing, and a Florida Closing. Each of these closings were to occur as early as April 1, 2022, or the fourth (4th) business day after all conditions precedent have been satisfied, or a date mutually agreeable to the Plaintiffs and Porch.

4. In the Purchase Agreement, Defendants represented they had the financial ability and sufficient funds in cash to pay the purchase price payable at closing. Yet, as of the filing of this Complaint, Defendants have refused or otherwise unlawfully delayed full payment for the First Closing, all payment due for the Florida Closing, and have yet to begin processing the California Closing.

5. Specifically with respect to the Florida Closing, and despite constant communication and commitment from Plaintiffs to come to resolution, Defendants have continuously delayed and deferred their obligations in substantial and continuing breach of the Purchase Agreement. It has become apparent to Plaintiffs that Defendants were attempting to offer the appearance of cooperation, but, in reality, intended to obfuscate a process that should have been brief and streamlined.

6. Under the Services Agreement, which was a necessary component of the Purchase Agreement, Defendant Porch.com was to assume responsibility for the services of certain RWS employees. A true and accurate copy of the Services Agreement is attached hereto as **Exhibit B**.

7. In consideration of the agreement to transfer responsibility for the services of these certain RWS employees to Defendant Porch.com, the Services Agreement required payment of certain reimbursable expenses and a quarterly fee. Defendant Porch.com has failed, neglected, or refused to make several payments due and owing under the Services Agreement.

8.       Plaintiffs and Defendants also executed an Advisory Agreement on April 13, 2022, concerning certain services contemplated by Section 5.21 of the Purchase Agreement.

9.       Pursuant to the Advisory Agreement, Defendants agreed to pay RWS for advisory services related to the purchase and transition of RWS entities to Defendants. Such services varied from performance of executive management functions to engaging with industry partners and customers to help positively support Defendants.

10.      Defendants sent notice of cancellation of all but two advisory services, but have failed to pay when invoiced for the remaining services.

11.      Plaintiffs have been damaged by Defendants' failure to pay the full sum due under the Purchase Agreement, Defendants' constant delays and refusal to consummate the Florida closing, and complete failure to cooperate with Plaintiffs to effectuate the California Closing. Plaintiff RWS has further been damaged by Defendant Porch.com's refusal to pay required invoices under the Services Agreement and the Advisory Agreement. Plaintiffs have exhausted each dispute procedure required by the Purchase Agreement and Services Agreement in an attempt to afford Defendants an opportunity to cure the substantial breaches, but each attempt at resolution has failed.

## PARTIES

12.      Plaintiff RWS is an Indiana Corporation with its principal place of business in Carmel, Indiana.

13.      Plaintiff P. Nathan Thornberry is a citizen of the State of Indiana.

14.      Defendant Porch.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.

15.      Defendant Porch Group, Inc. is a Delaware Corporation with its principal place of business in Seattle, Washington.

## JURISDICTION AND VENUE

16. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 based on complete diversity of the parties and the amount in controversy exceeds $75,000.

17. This Court also has subject matter jurisdiction over this dispute because, pursuant to Section 14.2 of the Parties' Purchase Agreement, the Parties agreed as follows:

> Each party hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the District of Delaware … in any action, suit or proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby, and agrees that any such action, suit or proceeding shall be brought only in such court. Each party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such action, suit or proceeding brought in such a court and any claim that any such action, suit or proceeding brought in such a court has been brought in an inconvenient forum.

18. This Court has personal jurisdiction over Defendants because Porch.com, Inc. and Porch Group, Inc. are organized and existing under the laws of Delaware.

19. Venue is proper in this Court because, pursuant to Section 14.2 of the Parties' Purchase Agreement, the Parties agreed, "Each party hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the District of Delaware…" and "Each party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such action, suit or proceeding brought in such a court and any claim that any such action, suit or proceeding brought in such a court has been brought in an inconvenient forum."

## FACTUAL BACKGROUND

**A. Structure of RWS and its Subsidiaries**

20. Generally speaking, RWS is in the business of sales and marketing of, underwriting of, and administering a wide variety of residential service contracts, including but not limited to

short- and long-term warranty products for real estate market participants (such as real estate agents and brokerages), home inspection companies, and retailers.

21. Prior to the disputed transactions, Thornberry owned 100% equity interest in RWS, Residential Warranty Home Protection of California, Inc. (RWHPCA), and RWS Insurance Services, LLC (RWSINS).

22. In turn, RWS owned 100% equity interest in several subsidiary entities, including RWS Inspector Services Group, LLC ("RWSISG"), NXT Inspekt, Inc. ("NXT"), Mountain Warranty Corporation, Inc. ("Mountain"), Residential Warranty Services of Canada, Inc. ("RWS Canada"), RWS Home Service Contracts, LLC ("RWSHSC"), RWS of America, LLC ("Newco1"), and Residential Warranty Home Protection, LLC ("Newco2") (collectively "RWS Subsidiaries").

23. RWS also has ownership in certain other business, which were not subject to the Purchase Agreement.

24. Newco1 and Newco2 were organized to restructure RWS and were subject to the terms of the Purchase Agreement.

**B. The Purchase Agreement**

25. On February 28, 2022, Plaintiffs and Defendants entered into a valid and enforceable Stock and Membership Interest Purchase Agreement ("Purchase Agreement"). *See* Exhibit A.

26. Defendants Porch Group and Porch.com represented to Plaintiffs the two entities were acting together as Purchasers under the Purchase Agreement.

27. The Purchase Agreement, *inter alia*, contemplated three distinct sale transactions: the Sale of the First Closing Purchased Interests, the Sale of the California Interests, and the Sale of the Florida Assets.

28. With respect to the Sale of the First Closing Purchased Interests, the Purchase Agreement required Plaintiffs to sell, assign, and transfer to Porch at closing all of the RWSINS Interests, Newco1 Interests, Newco2 Interests, RWSISG Interest, NXT Interests, Mountain Interests, RWS Canada Interests, and RWSHSC Interests (collectively, "First Closing Purchased Interests") for $33,000,000 minus certain deductions calculated pursuant to Section 2.1.1 of the Purchase Agreement ("Closing Payment").

29. With respect to Sale of the California Interests, Section 1.3 of the Purchase Agreement required Thornberry to sell, assign and transfer all of the RWHPCA Interests for a price calculated in accordance with Section 2.1.2 of the Purchase Agreement ("California Closing Payment").

30. Finally, with respect to the Sale of the Florida Assets, Section 1.4 of the Agreement required RWS to sell, assign, and transfer all of RWS's right, title, and interest in and to certain Florida Assets—comprised of Florida service contracts—to Newco2, for a price to be calculated in accordance with Section 2.1.3 ("Florida Closing Payment").

31. The Purchase Agreement provided the closing date for each of the Sale of the First Closing Purchased Interests, Sale of the California Interests, and Sale of the Florida Assets was to be on the later of April 1, 2022 or the fourth (4th) business day after certain conditions precedent have been satisfied, or a date mutually agreeable to the Plaintiffs and Porch (respectively, "First Closing", "California Closing", and "Florida Closing").

32. As of the filing of this lawsuit, Defendants have refused or otherwise unlawfully delayed payment to Plaintiffs for the full potential of purchase price due under the Purchase Agreement due to Defendants' failure to begin the California Closing and Defendants' refusal or unlawful delay in consummating the Florida Closing.

## C. Florida Closing

33. As previously stated, Section 10.1 of the Purchase Agreement required Defendant to participate in the Florida Closing on the later of April 1, 2022, the fourth business day after certain conditions precedent were satisfied, or such other date as was mutually agreeable to Plaintiffs and Defendants.

34. Prior to closing, the Plaintiffs were to have obtained—and did obtain—any consents or approvals specifically related to the Florida Assets.

35. The term Florida Assets is defined in the Purchase Agreement as "the Florida service contracts."

36. Plaintiffs were required to have delivered to Defendants any documents or instruments that may be necessary to permit the Defendants to acquire the Florida Assets.

37. Plaintiffs were additionally required to have prepared and delivered to Defendants, at least three (3) days in advance of closing, a statement containing Plaintiffs' good faith estimate of the Florida Interim Period Net Cash and the Florida Closing Payment, and any reasonable documentation supporting such good faith estimates.

38. The Purchase Agreement defines "Florida Interim Period Net Cash" to mean, with respect to the period starting on the date of the Purchase Agreement and ending on the Florida Closing Date, all revenue of any kind or nature whatsoever received by the Defendants that is derived from or attributable to the Florida Assets during such period.

39. Plaintiffs met each of these conditions precedent to consummate the Florida Closing.

40. Conversely, Defendants were required under Section 10.3.1 of the Purchase Agreement to pay or cause to have been paid the payments required under the Purchase Agreement.

41. The purchase price payable to, or for the benefit of, RWS at the Florida Closing for the Florida Assets was to be calculated as the Base Florida Closing Payment minus the Estimated Florida Interim Period Net Cash.

42. Section 4.8 of the Purchase Agreement provided that Defendants had sufficient funds in cash to pay the purchase price payable at closing.

43. As of the filing of this lawsuit, Defendants have refused or otherwise unlawfully delayed payment due and owing to Plaintiffs with respect to the Florida Closing.

### D. Florida Assets

44. Following the First Closing, RWS was required to assign and transfer to Newco2—now an entity controlled by Defendants—all of RWS's right, title and interest in and to certain Florida Assets.

45. The term "Florida Assets" is defined in the Purchase Agreement as Florida contracts.

46. RWS did transfer the Florida Assets as required by Section 1.4 of the Purchase Agreement on April 1, 2022.

47. Upon information and belief, Defendants have mismanaged the Florida Assets.

48. Defendants now seek to punish Plaintiffs for Defendants' mismanagement of the Florida Assets by discounting or delaying the Florida Closing.

### E. Services Agreement

49. Section 8.2.13 of the Purchase Agreement required Plaintiff RWS and the companies purchased under the Purchase Agreement to execute and deliver a Services Agreement concurrently with the closing of the transactions under the Purchase Agreement.

50. Plaintiff RWS did deliver—and Defendant Porch.com accepted—such an agreement on February 28, 2022. *See* Exhibit B.

51. The purpose of the Services Agreement was to secure an orderly and effective transition of employees from Plaintiff RWS and the purchased companies to Defendant Porch.com.

52. The transition period was to last until May 1, 2022, or, under Section 4.1, up to twelve months, with an option to extend an additional 12 months, from the date of the Services Agreement, at which time any "Leased Employees" would become employed by Defendant Porch.com or an affiliate thereof and would no longer be employed by RWS.

53. During the transition period, the Services Agreement set forth the following allowance of shared services: (1) RWS would provide certain services to Porch.com and the employees of companies purchased under the terms of the Purchase Agreement; and (2) the employees of the companies purchased under the Purchase Agreement and Porch.com would supply certain services to allow RWS to continue the California Business and the Florida Business until such a time that the California Closing and the Florida Closing, respectively, were consummated.

54. The Services Agreement provided the purchased companies—now under the care and control of Porch.com—would pay RWS certain service fees and certain reimbursable expenses in conjunction with the shared services.

55. The parties agreed that the service fees and reimbursable expenses reasonably approximated the cost of providing the shared services contemplated by the Services Agreement, and each agreed to act in good faith the achieve the benefits of the Service Agreement and resolve any problems that may occur in a commercially reasonable way.

56. The Services Agreement required that the service fees and reimbursable expenses were to be invoiced quarterly and, if not paid within sixty (60) days, undisputed portions would accrue interest at rate of ten (10%) percent APR.

57. The Services Agreement further provided a dispute process by which the parties were required to negotiate in good faith to resolve invoice disputes.

58. On June 30, 2022, a representative from Defendant Porch.com communicated to Thornberry and others, "Given significant progress through Q2, I believe it's appropriate to change to the second fee tier of the Shared Services Agreement. Porch / RWSA will be leading Accounting, Regulatory and E&O Insurance in all material respects with RWS, Inc. providing assistance. I … would ask … the appropriate changes to the invoices are made before making the Q3 payment."

59. Schedule III of the Services Agreement contained the following fee schedule:

### Schedule III
### Service Fee

| Service | Quarterly Fee So Long as Performed in all material respects by RWS | Quarterly Fee So Long as Performed in all material respects by Purchaser with RWS Assistance |
|---|---|---|
| Phone system/IT (Port Numbers) | $0 | $0 |
| Accounting function | $16,666.67 | $8,333.34 |
| Regulatory/Compliance | $16,666.67 | $8,333.33 |
| E&O Insurance | $16,666.66 | $8,333.33 |

60. Prior to the June 30, 2022 communication from Porch.com, RWS invoiced the amounts shown in the first column of the Schedule III Service Fee for shared services for a total invoice of $50,000.00.

61. As a result of the June 30, 2022 communication from Porch.com, and beginning in the third quarter of the year ("Q3"), RWS adjusted its invoices for shared services to reflect the amounts in the second columns for each of "Accounting function," "Regulatory/Compliance," and "E&O Insurance" for a total invoice of $25,000.00.

62. RWS sent Invoice # 1018 dated August 1, 2022, to RWS of America (now an entity of Porch.com) for $25,000.00 for "Q4 2022."

63. RWS sent Invoice # 1037 dated November 2, 2022, to RWS of America (now an entity of Porch.com) for $25,000.00 for "Q1 2023."

64. As of the filing of this lawsuit, Defendant Porch.com has refused or otherwise unlawfully delayed payment due and owing to RWS with respect to the Services Agreement.

F. **Advisory Agreement**

65. Under Section 5.21 of the Purchase Agreement, the Parties agreed Thornberry would provide certain advisory services to Defendants and the purchased companies, for identified periods of time, and subject to the direction of the Defendants and purchased companies.

66. On April 13, 2022, the Parties entered into an Advisory Agreement whereby RWS would assume performance of the advisory services outlined in Section 5.21 of the Purchase Agreement.

67. The Advisory Agreement further required that payment contemplated by Section 5.21.3 of the Purchase Agreement for such services would be payed directly to RWS.

68. Section 5.21.3 required Defendants to pay $300,000 in gross compensation for the first year of advisory services, an amount which would be prorated if Defendants did not utilize RWS's services for the entire first year.

69. On August 31, 2022, Porch sent notice to Thornberry that it was terminating "certain" advisory services effective September 1, 2022.

70. However, Porch specifically stated the services provided under subsection 5.1.21 (xi) and (xii) would "remain in effect."

71. Because the Advisory Agreement remained in effect for subsection 5.1.21 (xi) and (xii), RWS issued invoices for the remaining advisory services for each of September and October 2022.

72. On November 3, 2022, Porch sent a communication to RWS's chief financial officer, stating: "The invoices for the advisory fee should not be billed, we terminated this agreement effective 9/1/22, so our records show we paid in full on this."

73. However, Porch's own August 31, 2022, notice acknowledged subsections 5.1.21 (xi) and (xii) would "remain in effect," and Section 5.21.3 required Porch to pay for the advisory services used during the first year.

74. RWS has since issued additional invoices for advisory services performed during the subsequent months.

75. As of the filing of this lawsuit, Defendants have refused or otherwise unlawfully delayed payment due and owing to RWS under the Advisory Agreement.

**G. Plaintiffs Express Concern Over Defendants' Delays and Non-Payment**

*The Florida Closing*

76. On September 26, 2022, Plaintiffs communicated to Defendants that the Florida Office of Insurance Regulation issued a license authorizing Residential Warranty Home Protection, LLC to transact business in Florida.

77. Plaintiffs also stated in the September 26, 2022 communication, "Florida is now yours!" and "All that's left is transferring the contracts …. You have a hard deadline of mid October as that's when our bond expires."

78. On September 28, 2022, Plaintiffs communicated to Defendants that, based on the communication from the Florida Office of Insurance Regulation, the Florida Closing Date occurred on September 26, 2022 and as a result, the Florida Purchase Price was due.

79. On September 28, 2022, Defendants responded to Plaintiffs, noting "I'll follow-up on timing of the wire once we validate the calculations required pursuant to the purchase agreement."

80. No wire payment was made between September 28, 2022 and November 2, 2022.

81. On November 2, 2022, Thornberry sent a communication to Matt Ehrlichman, CEO of Porch Group, stating "This has gone on way too long and I can't understand it."

82. Defendants responded on November 4, 2022, stating a plan to initiate the finance process on Monday, November 7, 2022 because "we just cleared board authorizations at our in person board meeting."

83. On November 8, 2022, Defendants again sent an email to Thornberry stating they were prepared to make the Florida payment, but had adjusted the amount of payment due in part to an allegedly undisclosed bonus program.

84. This is the first time Plaintiffs became aware that Defendants disputed such a program.

85. In fact, Thornberry immediately corrected Defendants' misrepresentations about the bonus program. For instance, the bonus program was a promotional strategy between RWS and third party inspectors. Additionally, the program was not conveyed to Defendants under the Purchase Agreement and it was rarely invoked by those eligible for such bonus. Further, the program was nationwide and not specific to the Florida Assets or Florida Closing.

86. Despite this, Defendants insisted on applying a substantial discount to the Florida Closing Payment based on this program.

87. Over the course of the next week, Thornberry and Defendants attempted to resolve disputes surrounding the bonus program.

88. On November 16, 2022, Thornberry expressed "This needs to happen a lot faster than it is moving. At this point you guys are far delinquent and we need resolution to this immediately." Thornberry also proposed alternative resolutions for the Parties' dispute.

89. On November 28, 2022, Thornberry sent a detailed calculation of the Florida Closing Payment and additional amounts disputed by Defendants. Thornberry again proposed alternative resolutions and demanded a wire transfer by 4 PM EST the next day. Thornberry further stated "We are now on the cusp of December, with still not even a partial payment made despite every reasonable effort being made."

90. On Friday, December 2, 2022, Defendants sent Plaintiffs correspondence indicating a "Wire most likely goes out on Monday."

91. On Wednesday, December 7, 2022, Defendants sent Plaintiffs further correspondence with a recalculated Florida Closing Payment, stating "As soon as agreements are executed, we will fund the wire."

92. Plaintiffs responded to Defendants, continuing to dispute the Florida Closing Payment amount.

93. As of the filing of this lawsuit, no payment has been received in connection with the Florida Closing.

*The Services Agreement*

94. On November 2, 2022, RWS's chief financial officer emailed the head of accounting for RWS of America (a Porch.com entity) requesting payment status for certain past due invoices, including Invoice #1018 for Q4 2022 shared services.

95. In response, RWS of America stated, "I believe we are looking to end this one soon as well, so I will hold off paying this until they let us know the timing, so the invoice can be updated."

96. As of the filing of this lawsuit, Plaintiffs have received no payment has been in connection with shared services invoices for Q4 2022 and Q1 2023.

### COUNT 1: BREACH OF CONTRACT (PURCHASE AGREEMENT)

97. Plaintiffs incorporate paragraphs 1 through 96 as if fully set forth herein.

98. The February 28, 2022 Purchase Agreement by and between Plaintiffs and Defendants is a valid and binding written contract.

99. Plaintiffs have performed all conditions precedent to full performance of the Purchase Agreement.

100. The First Closing occurred on February 28, 2022.

101. Defendants have refused or unlawfully delayed the full amount of the First Closing Payment due under the Purchase Agreement through their continuing delay and refusal to consummate the California Closing and the Florida Closing.

102. Plaintiffs have been damaged by this breach in an amount to be determined at trial.

## COUNT 2: BREACH OF CONTRACT (FLORIDA CLOSING)

103. Plaintiffs incorporate paragraphs 1 through 102 as if fully set forth herein.

104. The February 28, 2022 Purchase Agreement by and between Plaintiffs and Defendants is a valid and binding written contract.

105. Plaintiffs have performed all conditions precedent to full performance of the Purchase Agreement.

106. The Florida Closing occurred on September 26, 2022.

107. Defendants' refusal or unlawful delay in making payment at the Florida Closing breaches Defendant's obligations under the Purchase Agreement.

108. Plaintiffs have been damaged by this breach in an amount to be determined at trial.

## COUNT 3: SPECIFIC PERFORMANCE (FLORIDA CLOSING)

109. Plaintiffs incorporate paragraphs 1 through 108 as if fully set forth herein.

110. The February 28, 2022 Purchase Agreement by and between Plaintiffs and Defendants is a valid and binding written contract.

111. Plaintiffs have performed or are ready, willing, and able to perform all conditions precedent to full performance of the Purchase Agreement.

112. The Florida Closing occurred on September 26, 2022.

113. Defendants have represented they have the cash available to consummate the Florida Closing but have refused to make payment in fulfillment of their obligations.

114. Defendants' refusal to make payment at the Florida Closing breached Defendants' obligations under the Purchase Agreement and monetary damages are inadequate.

115. Money damages are not adequate to account for Defendants' continued breaches of the Purchase Agreement.

## COUNT 4: UNJUST ENRICHMENT (FLORIDA ASSETS)

116. Plaintiffs incorporate paragraphs 1 through 115 as if fully set forth herein.

117. Plaintiffs transferred Florida Assets to Defendants following the First Closing as required by the Purchase Agreement.

118. Defendants have enjoyed the benefit of the Florida Assets since April 1, 2022, despite making no payment to Plaintiffs with respect to the Florida Assets and despite refusing or delaying the Florida Closing.

119. Such a benefit to Defendants was not contemplated by the Parties' Purchase Agreement.

120. Continued benefit to Defendants would be unjust to Plaintiffs.

## COUNT 5: BREACH OF CONTRACT (SERVICES AGREEMENT)

121. Plaintiffs incorporate paragraphs 1 through 120 as if fully set forth herein.

122. The February 28, 2022 Shared Services Agreement by and between Plaintiff RWS and Defendant Porch.com is a valid and binding contract.

123. Plaintiff RWS has performed all conditions precedent to full performance of the Services Agreement.

124. Defendant Porch.com's refusal or unlawful delay in making payments for shared services breaches Porch.com's obligations under the Services Agreement.

125. Plaintiff RWS has been injured in the amount of at least $50,000 plus interest to be calculated in accordance with the Services Agreement.

## COUNT 6: BREACH OF CONTRACT (ADVISORY AGREEMENT)

126. Plaintiffs incorporate paragraphs 1 through 125 as if fully set forth herein.

127. The April 13, 2022 Advisory Agreement between Plaintiffs and Defendants is a valid and binding contract.

128. Plaintiff RWS has performed all conditions precedent to full performance of the Advisory Agreement.

129. Defendants' refusal or unlawful delay in making payments for advisory services breaches Defendants' obligations under the Advisory Agreement and Section 5.21.3 of the Purchase Agreement.

130. Plaintiff RWS has been injured in the amount of at least $125,000 plus late fees in accordance with the Advisory Agreement and Purchase Agreement.

### COUNT 7: FRAUDULENT CONCEALMENT (FLORIDA CLOSING)

131. Plaintiffs incorporate paragraphs 1 through 130 as if fully set forth herein.

132. The Purchase Agreement between Plaintiffs and Defendants is a valid and binding contract.

133. As a condition of the Purchase Agreement, Defendants represented that they had the financial ability to close the transactions in dispute.

134. Upon information and belief, Defendants do not have the financial ability to close the transactions.

135. Rather, Defendants have deliberately delayed the Florida Closing and have insisted punishing Plaintiffs for a nationwide bonus program, which neither implicates the Florida Closing nor was it ever acquired or transferred to Defendants as part of the Purchase Agreement, all in an effort to discount the Florida Closing Payment.

136. Upon information and belief, Defendants affirmatively took this action to deliberately conceal from Plaintiffs their financial inability to close on the transaction.

137. Plaintiffs have been injured in an amount to be determined at trial.

## COUNT 8: SPECIFIC PERFORMANCE (CALIFORNIA CLOSING)

138. Plaintiffs incorporate paragraphs 1 through 137 as if fully set forth herein.

139. The February 28, 2022 Purchase Agreement by and between Plaintiffs and Defendants is a valid and binding written contract.

140. Plaintiffs have performed or are ready, willing, and able to perform all conditions precedent to full performance of the Purchase Agreement.

141. The California Closing has yet to occur nearly a year after the Purchase Agreement was signed by both parties.

142. Defendants have represented they have the cash available to consummate the California Closing, but have refused or unlawfully delayed consummation of the California Closing.

143. Defendants' refusal or unlawful delay to consummate the California Closing is a breach of Defendants' obligations under the Purchase Agreement.

144. Monetary damages are inadequate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Thornberry and RWS respectfully request that this Court find Defendants have breached the Purchase Agreement, Services Agreement, and Advisory Agreement, award damages to Plaintiffs in an amount to be determined at trial and for any additional relief this Court deems just and proper.

Dated: March 3, 2023

BARNES & THORNBURG LLP

/s/ William Burton
William Burton (No. 6234)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: 302-300-3449
Facsimile: 302-300-3456
william.Burton@btlaw.com

*Attorney for Plaintiffs Residential Warranty Services, Inc. and P. Nathan Thornberry*